# Robert Hill *versus* James B. Hill.

*Condition in Restraint of Alienation construed.—Relation of Landlord and Tenant, creation of by Construction.*

1. A firm R. & J., and another, N., adjoining owners of land, agreed to build an engine, boilers, and stack, on land of the latter, to be used as a common source of power, stipulating in the agreement that the one making the largest offer for the part of the other, should at any time have the pre-emptive right to buy, and that they would not sell their respective premises to any third party without the consent in writing of the other party: by various conveyances N.'s interest became vested in R., as to one-half, and in D., a third party, as to the other half, while the interest of the firm passed by deed from the receiver appointed by the court after dissolution of the firm, to J. In an action of ejectment between them, involving the right to use the engine, &c., it was claimed that the deed from the receiver passed no interest, because of the condition in restraint of alienation. *Held*, That the condition was only a restraint upon the parties to it, and did not apply to a sale by the act of the law: and that, as it related only to the "respective premises" of the parties, it was not applicable to the engine, boilers, and stack.

2. Where the original agreement was a sale, creating no relation of landlord and tenant between the parties to it, R. could not by his purchase of N.'s interest, become J.'s landlord, nor could J., by disaffirming the title of his alleged landlord, forfeit his rights.

ERROR to the District Court of *Allegheny county*.

[Robert Hill v. James B. Hill.]

This was a writ of error, sued out by the plaintiff below in the case above reported, who, on his part, averred here that the court below erred: 1. In entering a judgment recognising a right in the defendant below to remain in possession of the premises described in the case stated. 2. In entering a judgment which recognised a right in the defendant below to own and possess the boiler, engine, and stack, jointly with the plaintiff. 3. In not entering judgment for the plaintiff without any reservation in favour of the defendant; and 4. In not entering judgment in favour of the plaintiff, reserving a right to the defendant to own and possess the boiler, engine, and stack in equal proportions with the plaintiff; and in erroneously awarding the defendant the right to hold and possess three-fourths of the said boiler, engine, and stack.

In support of these assignments of error, *George Shiras*, Jr., for plaintiff, contended:

1. That the articles of agreement in evidence conferred on defendant no right to hold and possess fixtures or lands of plaintiff; that the original agreement between J. S. Negley of the one part, and R. & J. B. Hill of the other part, did not enure to the benefit of the assigns of R. & J. B. Hill, or of J. B. Hill, the subsequent purchaser at the receiver's sale, but contained a condition in restraint of alienation, without the consent of the other party; that J. S. Negley thereby conferred only a personal privilege on R. & J. B. Hill. The doctrine of *delectus personarum* evidently applies. Nor does a reference to the use of the term "heirs and assigns," in this instrument, decide the matter. Where one portion of a deed discloses a condition that the lessees shall not alien without the consent of the landlord in writing, and another clause conveys the premises to "lessees and assigns," the latter clause is to be construed in subordination to the former; and the term "assigns" denotes that class of assigns permitted by the restraining clause, to wit, those holding by an assignment consented to in writing by the lessees. If this be correct, the receiver of R. & J. B. Hill could not confer, nor could J. B. Hill, the purchaser, take any interest or right in, or to the land of J. S. Negley, now the land of Robert Hill.

2. But even if the articles between Negley and R. & J. B. Hill be held to enure to the benefit of J. B. Hill, the purchaser at the receiver's sale, he has forfeited all rights under these articles by disaffirming or repudiating the title of his landlord. The articles of July 12th 1852 created the relation of landlord and tenants between Negley and the Hills. If the previous position, that the privileges granted ceased with the estate of R. & J. B. Hill, be overruled, then that relation of landlord and tenant has descended to Robert Hill, the successor of Negley,

7 WR.—34

on the one side, and to James B. Hill, the purchaser of R. & J. B. Hill's interest, on the other. And "any act of the lessee, by which he disaffirms or impugns the title of his lessor, occasions a forfeiture of the lease:" Bacon's Ab. tit. *Lease* 2; Parsons on Contracts 427; Willison *v.* Watkins, 3 Peters 48, 50; Newman *v.* Rutter, 8 Watts 54; Stewart *v.* Rodrick, 4 W. & S. 189. The articles of May 18th 1855, between Dawson, Newmyer & Co. and James B. Hill, were a transaction, private in its nature, not put of record, and in fraud of the rights of the landlord. Viewed in the light of the subsequent claim of J. B. Hill, to own the whole of the fixtures, and to continue in exclusive possession of the plaintiff's ground, this was an evident attempt to secretly procure an adverse title, which was subsequently sprung upon the plaintiff. If the law be as stated, it is not incumbent on the plaintiff to vindicate the policy and equity of that principle of forfeiture he now invokes. The court below erred in allowing the defendant first to grasp at the whole title, and that attempt failing, to fall back upon the articles of July 12th 1852, whose privileges he had persistently denied to the plaintiff: Willison *v.* Watkins, 3 Peters 43.

3. If the articles of July 12th 1852 be construed as enuring to the benefit of a subsequent purchaser of R. & J. B. Hill's interest therein, and if it be considered that James B. Hill did not, by claiming to own all the engine, stack, &c., and by excluding Robert Hill from the joint enjoyment and possession thereof, forfeit his interest, still the court erred in awarding three instead of two fourths of the fixtures to James B. Hill. It is true that Negley sold one of his two-fourths of these fixtures to Dawson, December 31st 1853, and that William Dawson and J. S. Newmyer afterwards, by agreement dated 18th May 1855, undertook to convey unto James B. Hill two-fourths of the fixtures. But as Dawson and Newmyer owned only one-fourth, they could at most convey but one-fourth, and as they were tenants of Negley and his successor, Robert Hill, their conveyance of fixtures was merely good for the term of their lease. When their lease expired, neither they nor their assignee had any right to these fixtures. Possibly, if Dawson and James B. Hill had together owned the entire fixtures, instead of having a mere right to use them jointly with Negley and his successors, they might have treated them as personal property, and removed them during the term. But having suffered them to remain till the expiration of the term, they are now part of the realty, and cannot be conveyed by mere unacknowledged and unrecorded bills of sale, no notice of which has been brought to the plaintiff. The extent of the defendant's ownership is defined by the original articles of the 12th July 1852, they being his only record evidence of title, and the only title in view of which the plaintiff

can be supposed to have purchased from James S. Negley's assignee.

*A. W. Loomis,* contrà.

The opinion of the court was delivered, January 5th 1863, by
WOODWARD, J.—This is a cross-writ of error to the same judgment as the above. After what has been said in the foregoing case, a few words will suffice to despatch the errors assigned by the present plaintiff in error.

He points to a condition in restraint of alienation in the agreement of 12th July 1852, and in virtue of it denies that the receiver of R. & J. B. Hill could confer any title on J. B. Hill. The answer is two-fold. First, the condition was a restraint upon the parties, one of whom was James S. Negley and the other of whom was R. & J. B. Hill. The sale under which J. B. Hill purchased was not made by either of these parties, but was the act of the law. If this were not so, if it had been a release by Robert to James, do counsel mean that when Robert subsequently acquired Negley's interest he could set up this covenant to defeat his own deed of release? Surely not. Having either released his interest or permitted it to be divested by operation of law, it is not for Robert now to defeat the purchaser by alleging his own breach of covenant. But secondly, the condition related expressly to the "respective premises" of the parties. It will be observed that Negley carved his lots into two parts, conveyed one part to R. & J. B. Hill and retained the other part. The parties covenanted that the one making the largest offer for the part of the other should at any time have the pre-emptive right, and that they would not sell their respective premises to any third party without the consent in writing of the other party. This was the covenant, and it would require a good deal of forcing to make it applicable to the engine, boilers, and stack. These were on Negley's premises, and if the covenant apply to them at all, it would restrain Robert from buying out Negley, except for the benefit of R. & J. B. Hill. To give effect to the covenant in this case, we should have to treat Robert's purchase as enuring to the benefit of his brother, a result which the argument did not mean to accomplish. The better view is, however, that the covenant has no application to the present subject of dispute.

The next point taken is that the articles of 12th July 1852, created the relation of landlord and tenant between Negley and the Hills; that Robert, by his purchase of Negley, became the landlord of James; and that the latter has forfeited his rights by

[Robert Hill *v.* James B. Hill.]

disaffirming and impugning the title of his landlord. In support of which doctrine various authorities are cited.

Without discussing the authorities, we deny the premises altogether. We say there is not a word in the articles of 1852 to import an intention to establish the relation of landlord and tenant. There is neither demise, nor term, nor rent. It is a sale, out and out, of certain real estate with the privilege of enjoying the source of steam-power that had been planted on the unsold portion of the vendor's premises. A corporeal and an incorporeal hereditament conveyed for a price, neither of which were leased for a rent. It is a mistake, therefore, to treat the case upon the law of landlord and tenant.

Another mistake is made when it is said that as Dawson & Newmyer were only tenants of Negley, they could not convey these fixtures for more than their term, and as they were not removed during the term they passed by the sale of Negley's assignee to Robert Hill. Under the agreement of 31st December 1853, Dawson originally, and afterward Dawson, Newmyer & Co., and then Newmyer & Graff, were indeed Negley's tenants of the *Empire Works,* but were absolute purchasers of one-half of the machinery, tools, furnaces, &c., of the factory, and "also one-fourth of engine, boilers, stack, and fixtures thereto belonging (the one-half thereof belonging to R. & J. Hill"). For reasons given in the former case, we consider the engine, boilers, and stack something more than mere fixtures, but whatever they were, they were not leased, but an undivided fourth was sold to Dawson, and from him passed to J. B. Hill. It is impossible, therefore, to see how the expiration of the term for which the Empire Works were leased can affect the title of J. B. Hill to the engine, boilers, and stack, which, always held by purchase and never by lease, are the bones of contention in this suit.

On the whole, we see as little reason for disturbing the judgment upon this writ of error as upon the former one, and therefore

*The judgment is affirmed.*